**MARIA JONES LAW FIRM**
Attorneys at Law
Joshua S. R. Kolsrud, Esq. No. 025573
202 E. Earll Dr. Ste. 370
Phoenix, Az. 85012
Phone: (480) 415-8859
Josh@MariaJonesLawFirm.com

Attorney for Defendant Zwolinski-Kruska

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>James Frank Zwolinski-Kruska,<br>Defendant. | **Case No.: 2:21-cr-00681-JJT-1**<br><br>**SENTENCING MEMORANDUM AND OBJECTION TO PSR**<br><br>(Out of custody) |

COMES NOW Defendant, James Frank Zwolinski-Kruska, through counsel, respectfully submits its sentencing memorandum in the above-captioned matter. The sentencing hearing is currently scheduled for November 21, 2022, before District Court Judge John J. Tuchi. Counsel reviewed the Presentence Report (PSR) with Mr. Zwolinski, and there is one objection to the contents or findings of that report. Mr. Zwolinski objects to the PSR's contention that he was a prohibited possessor due to marijuana use. This objection does not affect the final guideline calculations, which Mr. Zwolinski has no objection to.

In accordance with the recommendations of the PSR, and pursuant to the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), Mr. Zwolinski respectfully requests that the Court follow the terms and recommendations of the plea agreement and sentence Mr. Zwolinski to time-served sentence followed by 36 months' supervised release. Given the personal circumstances, family support, and role in the overall offense, a sentence of time served will provide sufficient punishment, promote respect for the law, and allow for adequate deterrence.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The PSR accurately calculates Mr. Zwolinski's total adjusted offense level at 23. (ECF 34 at 14.) Mr. Zwolinski falls into criminal history category I, and the applicable guideline range is therefore 46 to 57 months in the Bureau of Prisons (BOP). *Id*. Both Mr. Zwolinski and the PSR request sentences significantly below the final guideline range. *Id*. The PSR recommends a downward variance, because of Mr. Zwolinski's lack of criminal history, his family ties and responsibilities, his compliance with the terms of his release while pending sentencing on the instant offense, and that his offense level may be overrepresented based upon an enhancement of eight levels for high-capacity magazine combined with his marijuana use. (*Id* at ¶69; p. 14.) The PSR further requests the Court grant Mr. Zwolinski a downward variance and recommends 12 months and a day in the Bureau of Prisons ("BOP"). (*Id*. at 14.)

Pursuant to the plea agreement, Mr. Zwolinski is requesting a sentence below the guideline range and is moving for a downward variance. Specifically, Mr. Zwolinski respectfully requests that he be sentenced to time-served sentence followed by 36 months' supervised release. Considering Mr. Zwolinski's personal circumstances, history and characteristics, family support, and the unique facts of the offense, this sentence is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

Mr. Zwolinski's "Offense Conduct" is contained within the PSR, Part A, ¶¶ 1 through 28, and that information is incorporated herein by reference.

## II. ARGUMENT

The factors set forth at 18 U.S.C. § 3553(a) weigh in favor of a time-served sentence followed by 36 months' supervised release.

### A. The PSR Recommends A Sentence Significantly Below the Final Guideline Calculation

The PSR recognizes that this case warrants a significant downward variance. The PSR highlighted that a downward variance was warranted to account for Mr. Zwolinski's "lack of criminal history, his family ties and responsibilities, and that his offense level may be overrepresented based upon an enhancement of eight levels for high-capacity magazine combined with his marijuana use, his eligibility for safety valve, acceptance of responsibility, and placement into a Criminal History Category I." (ECF 34 at 14.) The PSR further explains that Mr. Zwolinski is the sole provider for his wife and young child,

and he has remained in compliance with the terms of his release while pending sentencing on the instant offense. *Id*. The PSR writer believes Mr. Zwolinski's offense level is overrepresented. *Id*. The PSR writer states that, "while the offense did involve at least one firearm capable of accepting a high-capacity magazine, this pistol involved a magazine with a capacity of 17, only slightly above the threshold of 15 for this to apply." *Id*. The PSR further explains that Mr. Zwolinski was determined to be a prohibited possessor based upon his marijuana use during the time of the offense. *Id.* These two factors together led to an increase of eight levels to his base offense level, which is the same enhancement applied to other defendants involved with firearms capable of accepting significantly larger capacity magazines and who are using much more dangerous drugs. *Id*.

The PSR emphasizes that the identified mitigating factors related to Mr. Zwolinski's individual history and characteristics as well as the offense calculation warrant a sentence "***well below***" the advisory guideline range. (*Id*. at 15); (emphasis added.) The PSR recommends a sentence of 12 months and one day imprisonment, followed by 36 months' supervised release. *Id*. The PSR believes that this sentence appears sufficient but not greater than necessary to satisfy the sentencing considerations outlined in 18 U.S.C. § 3553(1), specifically deterrence, protection of the public, the seriousness of the offense, and to avoid unwarranted sentencing disparity from similarly situated defendants. *Id.* A fine is not recommended based upon inability to pay. *Id.* The facts supporting a downward variance and adjustment are discussed below.

### B. The Nature and Circumstances of the Offense; Promoting Respect for the Law; Providing Adequate Deterrence to Criminal Conduct

A time-served sentence is sufficiently punitive and not more than necessary to deter Mr. Zwolinski from reoffending. He has learned his lesson and is eager to continue getting back to living a crime-free lifestyle. Mr. Zwolinski is well aware that reoffending will lead the Court to revoke his supervised release and he will be sent to the BOP.

#### a. Mr. Zwolinski's Background

James Zwolinski was born October 18, 1989, to his mother Kimberly Ann Zwolinski who worked as a manager in the healthcare, and father Mark Kruska who worked as a C.D.L driver. Mr. Zwolinski grew up around firearms. His father would often take him shooting.[1]

Mr. Zwolinski also grew up in a loving, kind, and supporting household. Mr. Zwolinski is close to his younger sister, Rebecca Ann McGuire. Mr. Zwolinski and Rebecca were always close growing up. Rebecca even joined the high school wrestling team so she could be closer to Mr. Zwolinski.

Mr. Zwolinski graduated from Country Meadows elementary school in 2004. During that time, Mr. Zwolinski rode "BMX," played drums in band, and wrestled competitively. Mr. Zwolinski was brought up in a strict religious, but loving Christian household. Mr. Zwolinski and his friends went to youth church every Wednesday, and

[1] In 2020, Mr. Zwolinski met Nick Blesich, owner of heritage armory, in 2020 when he encouraged me to invest the firearms and to sell some that Mr. Zwolinski had purchased, stating that before he became successful in firearms business, he often sold guns under the table to buyers on Arms list and other sites, and stated it was perfectly legal.

attended Friday evening church events. Mr. Zwolinski always attended church service on Sundays.

In the eighth grade, Mr. Zwolinski was in an advanced mathematics class, and stayed after school to excel his abilities. Thereafter Mr. Zwolinski attended Raymond S. Kellis High School from 2004 to 2007. During that time, Mr. Zwolinski was a lead on the wrestling team and wrestled at a varsity level as a sophomore. Mr. Zwolinski coached wrestling, and he spent his summers attending wrestling camps with friends. In high school, Mr. Zwolinski was also into weightlifting and power lifting, setting a few records in bench press as well as incline press. Mr. Zwolinski attended “Cougar Pride Camp” in high school, which was focused on building character and morals. Mr. Zwolinski was also on the swim team, and even set a couple records as a freshman and sophomore.

After graduating high school, Mr. Zwolinski worked for a high-end residential window cleaning company. The high-end company recognized Mr. Zwolinski’s talents, and promoted him to supervisor, before Mr. Zwolinski founded his own window cleaning company. Mr. Zwolinski built his business from scratch and brought in $58,000 in revenue 2019. Mr. Zwolinski’s company has grown rapidly and has a great reputation in Scottsdale, Paradise Valley and Vistancia communities.

**b. Mr. Zwolinski’s Residential Address**:

Mr. Zwolinski grew up in the same house that his parents still reside at today: 10744 W. Vista Ave. Glendale, Az. 85307. Mr. Zwolinski used this address while filling out the ATF paperwork. Mr. Zwolinski has lived at his parent’s residence on and off for

most of his adult life. When Mr. Zwolinski and his wife have relationship problems over the course of the last 14 years, Mr. Zwolinski would reside at his parent's house. During the dates of offense in this case, Mr. Zwolinski was having marital issues, and he was living at his parent's house as his primary residence. Mr. Zwolinski had no nefarious purpose when listing his parent's primary address as his on the ATF forms.

### C. Mr. Zwolinski's Good Character[2]

In the instant case, Mr. Zwolinski received significant support from family and friends who will vouch for his integrity, good character, generosity, strong work ethic, compassion for others, and devotion to his family.

Mark Kruska is Mr. Zwolinski's father. Mark is a proud father. He describes Mr. Zwolinski as a moral, hard-working, caring individual. Mark believes that a sentence to prison will devastate Mr. Zwolinski's family:

> "Hello, I'd like to start off by thanking you for taking the time for reading this on behalf of my son James Zwolinski. My name is Mark Kruska, I am Jims Father. Here's a little background on myself. I've worked in warehousing for approximately 20 years and 8 of those were in management. I'm currently employed by Ruan and possess a CDL where I deliver to Frys Foods.
>
> Jim was always a very good kid even as a child. He helped out a lot around the house and never complained about it, as a matter a fact he took pride in helping for example: His older brother had disabilities so his mom had to attend many meetings at his school so Jim would watch his little sister so she didn't have to take her to the school meeting with her. I could give you hundreds of examples like this maybe more. The point is Jim is a selfless person that always puts his family first. Jim was on the wrestling team in H S.

[2] The local rules prohibit attaching character letters to sentencing memorandums. Therefore, the referenced character letters were emailed to the Parties before the sentencing hearing.

> When his sister was transitioning from 8th grade to freshman, she wanted to be a wrestler too, so he talked his coach into letting her be on the team if she made try outs. He spent almost every day of his summer vacation practicing in the school gym with her. She tried out and became the first female wrestler at Raymond D Kellis HS.
>
> Jim has always had lots of friends but kept his best friend, Erica. They have been together for 14 years childhood sweethearts. They are married now and have a beautiful daughter. My granddaughter! Jim is now a successful small business owner that he has built from nothing but hard work, a little blood, a lot of sweat and some tears. Jim and Ericas business is starting to really pick up and between the two of them I can see great things happening for the family of 3.
>
> If jail time handed down it's going to devastate our family and his family
>
> *Jim is a productive tax paying citizen that made a mistake putting him in jail would not benefit anybody.
> *Giving Jim a felony would ruin him, Erica and Lucy's lives forever
> *Erica would lose her home
> *Jim and Erica would lose the business
> *Lucy would forget her Papa aka Jim because she will not be going to prison for visitation, she is only 2years old.
> *Mother won't be able to see him because she is disabled
> *Can't see how jail time would reform someone for putting the wrong address. If anything, he could possibly come out tainted and nobody wants that!
> Thank you for listening"

Teresa Roberts is Mr. Zwolinski's mother-in-law. She describes Mr. Zwolinski's emotional maturity, and his desire to be good Christian husband and father:

> "I am Teresa Roberts. 50 years old, housewife. I attended BYU Idaho. I worked in finance from 1995-2006. I have been taking care of/watching my grandkids at home since 2008. Lived in Arizona since February 2002. I am Erica Zwolinski's stepmom. I have two other stepdaughters and 8 grandchildren.

> James Zwolinski is my son-in-law. I have known him since 2008. Him and our daughter lived with us for awhile as they saved money to get out on their own. I have watched him interact with his family, our family, his wife and child.
>
> I have watched James grow and mature into a fine man. He is now a successful small business owner. He is always thinking and providing for his wife and daughter, Erica and Lucille. He is devoted to them. James has a wonderful sense of humor, is always open to other people's ideas and takes the time to connect with anyone around him. Willing to help others if needed. He is of the Christian faith.

Kimberley A. Zwolinski Kruska is Mr. Zwolinski's mother. Kimberley has a mother's love for her son. She describes Mr. Zwolinski's strong Christian faith, and how she believes that a prison sentence would be harmful to Mr. Zwolinski's family:

> "Hi, my name is Kimberley A. Zwolinski Kruska. I'm Jimmys Mom. When my 3 children were small {3 children in 4yrs} I was a stay-at-home Mom. When my youngest started kindergarten I then worked in their school cafeteria in order to have the same hours as them. Then I worked in the medical field for 20 years, 10 of those as an administrator. Went on to work for the V.A. I am now disabled and had to stop working. That is when Jimmy stepped up once again and helped take me to doctors appts. pick up prescriptions, get groceries, along with anything else I may need.
>
> We have always seen Jimmy on a regular basis. This is a second home to him and his family, and he grew up in this home. We do recreational activities with Jimmy and his family quite frequently. Such as target shooting, hunting, rock hounding, fishing, camping and family dinners. We are a VERY CLOSE FAMILY! Jimmy has always been extremely responsible {even as a child}.
>
> When his older brother would get bullied and picked on {which was pretty much all the time} because he had a speech impairment along

> with a learning disability Jimmy was always by his brother's side to protect him. Instead of walking to and from the bus stop with his friends Jimmy took it upon himself to walk with his brother {completely unprompted by myself or my husband}. He always made sure his big brother and baby sister were safe! Jimmy is a hard worker with fabulous work ethics. He started working at age 15 1/2 and he's held a job ever since. He currently has his own business that he has built from the ground up. His work is hard labor {window washing, window film, pressure washing and screens} but he loves it oh so much. We have no doubt that he and Erica will exceed. If Jimmy is sent to jail, he could very well lose his business.
>
> Jimmy has been with the same lovely young lady - Erica for 14yrs. They were High School sweet hearts. With a lot of hard work and due diligence the two of them set their goals and met their goals and have been married for almost 3yrs now. They now have a precious 2yr old daughter Lucille 'Lucy'!!
>
> Jimmy is a Wonderful Father with a business and a contributor to our society, what good would it due to put this young father in jail? It would serve no purpose but to destroy another family! Please take my words into careful consideration as he is a good man and Christian by faith!"

Clifford Roberts is Mr. Zwolinski's father-in-law. Unlike some, Mr. Zwolinski has a wonderful relationship with his in-laws. Clifford is proud of the man Mr. Zwolinski has become, and he describes his character progression over time:

> "In California I worked for Johnson & Johnson Cardiovascular and Medtronic in Research & Development and Product Management. Since the late 90's I have worked for Symantec, Sage Software and ACT! as a Product Manager and Sales Engineer helping companies grow their business relationships with the use of CRM software. I also work as a business consultant implementing and training end users on the use of such software solutions.

I have known James since he was in elementary school as a friend of my daughter, Erica Roberts. Over the years James and Erica grew closer and as a father of a daughter there is always concern. Teenage years are always rough for any parent, ‘will they make the right choices’, ‘do they have the right kind of friends’. Our daughter had a large circle of friends and James was included so my wife and I would see him often. No matter if I was dropping Erica off at the part or picking up her and her friends to take them to the movies James was always there. When James started courting Erica we got to know him and his family better. As a parent we have been fortunate to see our daughters’ husband over the last 20 years grow from a typical teenage boy to a responsible man. James and Erica have a daughter that just turned two the day after Christmas, and we are so very fortunate that we have a son who cares so deeply for family.

Personal Growth – I have observed James when is exposed to new ideas and wishes to learn more. No matter the particular topic, whether it be parenting skills with baby books, American history, politics, or business success, he invests in himself.

Responsibility – I have watched challenge after challenge be thrown at James and he always steps up; he doesn’t run away or delegate. He asks for advice when needed and makes the best decision based on the information. James has always stood by my daughters’ side and been nothing but helpful to me and our family.

Entrepreneur – James wasn’t simply happy working for another company, he grew his still set and knowledge until he took the step to create his own company. Taking a risk that many people still today would not do. James has a vision of where he wants to grow his company and invests into the tools and equipment to make that dream come true.

Accepting – I have observed James in personal and business environments where the other person wanted more, or claimed they were in the right, or vehemently disagreed, James didn’t become adversarial or angry but simply asked questions to better understand what the real issue was and how he could help correct it.

> Family – a loving husband and father, making sure to take time out of his day to not only spend time with his daughter but to help her grow her knowledge through games, toys and reading to her. Every time our granddaughter comes to visit she knows more words, recognizes more animals and I am always amazed by her growth. James has a true partnership with our daughter, and they work together to build a better life.
>
> Faith – Our daughters were not raised with structured religion so when James and Erica were introduced to faith it strengthened their relationship, simply revealing to me how mature he has come from the teenage boy that I knew.
>
> I have watched James grow from a typical teenage boy grow into a young and a responsible adult. From a single man to a husband and a responsible father. I am proud to have James be part of my daughter's family and my family. He is constantly growing, learning, and building a better life not just for himself or his family but for his business and his customers and those around him."

Catherine Lafee is one of Mr. Zwolinski's window cleaning customers. Catherine was so impressed with Mr. Zwolinski's hardwork and dedication to detail, that she referred his services to her neighbors:

> "My name is Catherine Lafee and have been in the Investment Industry for over 35 years. I continue to be employed as a Relationship Manager at this time.
>
> My late husband and I first met James approximately 6 years ago when we employed him to clean the windows in our Fountain Hills home. He continues to clean my windows in my current home in Scottsdale. From the time James started working for us, he has always been incredibly personable and professional. I have over the years recommended James to my neighbors and many have subsequently hired him and to my knowledge continue to do so today.
>
> Although most of our conversations tend to be quick and often superficial, it has always been apparent that James is a good and thoughtful person. I had the pleasure of meeting his wife Erica when

> she worked with him before the birth of their daughter and there is no question how devoted he is to both.

Erica Zwolinski is Mr. Zwolinski’s wife. Erica describes how she and Mr. Zwolinski fell in love, and why he is a wonderful, hardworking, faithful person:

> My name is Erica Zwolinski. I have worked since the age of 15 and whether I was a shift leader at ColdStone Creamery, account manager at Discover Card or Owner of EJ Services LLC I have been an enthusiastic, positive employee, who's dedicated to completing the tasks but not complaining about the process. In 2017 I earned a degree in Business Finance and Glendale Community College. In about 2013 my partner James taught me the trade of window cleaning, a skill set that we have used to become co-founders and owners of EJ Services LLC. Currently I am a mother to two-year-old Lucille Zwolinski and wife to James Zwolinski-Kruska. I am a homemaker in addition to my role as partner of EJ Services LLC.
>
> As previously stated, I am James Zwolinski's wife. We met through mutual friends when we were both young teens in 2007 and we quickly became friends and then started dating. In high school James and I had class together, we had mutual friends and enjoyed spending time together with them and each other's family, in our late teens we both got jobs at Red Robin Gourmet Burgers. In our late teens James moved into my family's house with me until we got our own apartment together in our early twenties. In our mid-twenties James taught me the trade of window cleaning and in our later twenties we turned that trade into a business. Now in our early thirties we have a business of our own as well as a young daughter. James and I have grown up together for the last 14 years and I have known him as a friend, partner, coworker, husband and father. I have also seen him as a son, brother, grandson, employee, student and more. James is my best friend and it has been a joy to grow up alongside him and watch him develop into the man he is today.
>
> Growing up with James, I have watched him change from a young boy into a man. He is honest and caring in relationships, always considerate of others and willing to help in any way he can. He is such a positive person and has taught me to make the best out of every situation and to go the extra mile- especially for others. As a

> husband and father James is loving, patient and engaging. Our daughter adores him, she wakes up each morning talking about him, lights up when she sees or is around him and is glued to his side from the moment he walks in the door each day. Our customers love him, our business has grown mostly from customers referring us to friends and family because of James and his personality.
>
> Never one to settle James is constantly trying to grow and better himself. Back when we were still dating James introduced me to Christianity and our Lord Jesus Christ. Having a relationship with Jesus has been soul changing and I will forever have James to thank for that. James does not just attempt to better himself he tries to help everyone around him better themselves as well. Even with our customers or the cashier at our local grocery store James is eager to share knowledge regarding faith, nutrition, exercise, health, business and more. James is always learning and growing and is almost just as eager to take what he has learned and share it with others as he is to implement it in our lives.
>
> In about 2013 James taught me the trade of window cleaning. He spent hours training me and vouched for me when companies were not eager to hire a female. After working together for years, he encouraged me to start a business of our own and in 2019 we established EJ Services LLC. Initially we offered window cleaning services to customers across the valley. However, James was not satisfied being stagnant and he learned to build, repair and replace screens, install window tint and pressure wash. He is continually working to grow our business and provide for our family."

The above references constitute excerpts taken from character letters submitted on Mr. Zwolinski's behalf. Every letter is written by someone who can attest to the true character of Mr. Zwolinski as an individual, friend, family member, father, and son. Every letter describes Mr. Zwolinski as a caring, reliable, and kind-hearted individual who is committed to his family, the community, and his passion for helping others. These character references all share their support for Mr. Zwolinski, and they express their

belief that Mr. Zwolinski is a hard-working young man who has done so much for his family, relatives, and community.

Mr. Zwolinski feels sincere remorse for his conduct, and the instant offense is not representative of his true character. Fortunately, Mr. Zwolinski understands the serious nature of his conduct, is taking responsibility for his actions, and will have the support of his family, friends and relatives as he makes positive changes for the future.

**D. Pretrial Release: Mr. Zwolinski Has Met All Favorable Expectations on Pretrial Release**

After reading the character letters, it comes as no surprise that Mr. Zwolinski has followed the court's conditions of release from the beginning of the case to the present. Pretrial Services latest Status Report highlights that "Mr. James Zwolinski-Kruska has been on supervision for thirteen months. Since his release from custody, he has remained in compliance with the imposed conditions of release. The defendant has returned no positive urinalysis results and there are no indications he has not abided by his weapon restriction. The defendant has maintained a stable residence with his wife in Phoenix, Arizona and all home visits have revealed no issues of concern. The defendant has reported as directed and been cooperative with Pretrial Services." *See* Dkt. 35. Mr. Zwolinski's compliance over the past 13 months is additional evidence of Mr. Zwolinski's good character.

**E. Criminal History/Aberrant Behavior**

As stated above Mr. Zwolinski has no prior criminal history. Additionally, while Mr. Zwolinski may not qualify under the guidelines §5K2.2 for a departure for aberrant behavior, the Court may grant a variance downward where the offense appears to be an isolated mistake in a Defendant's otherwise law-abiding life. *United States v. Howe*, 543 F.3d 128 (3d Cir. 2008). The facts clearly show that Mr. Zwolinski's behavior was a stark deviation from his otherwise law-abiding life, and he respectfully asks the Court to grant a variance in part due to this aberrant behavior.

**F. Family Circumstances**

Mr. Zwolinski has strong family support, to include his wife and children. Mr. Zwolinski is the breadwinner of his family, taking care of all of their financial needs. The PSR explains that Mr. Zwolinski is the sole provider for his wife and young child. (ECF 34 at 14.) Should Mr. Zwolinski be sentenced to prison, his family would suffer tremendously in his absence. Courts have varied downward where the family circumstances warrants as such, as is the case with Mr. Zwolinski. *United States v. Lehmann*, 513 F.3d 805 (8th Cir. 2008) (affirming a downward variance to probation where the district court found that a prison sentence would negatively affect the defendant's disabled young son.) Mr. Zwolinski's father, Mark Kruska, described *supra* the impact a prison sentence would have on Mr. Zwolinski's family: "Jim is a productive tax paying citizen that made a mistake putting him in jail would not benefit anybody; Giving Jim a felony would ruin him, Erica and Lucy's lives forever; Erica would lose her home; Jim and Erica would lose the business; Lucy would forget her Papa aka Jim

because she will not be going to prison for visitation, she is only 2 years old. Mother won't be able to see him because she is disabled Can't see how jail time would reform someone for putting the wrong address. If anything, he could possibly come out tainted and nobody wants that!" Given the hardship Mr. Zwolinski's family will suffer if a prison sentence is pronounced, Mr. Zwolinski respectfully requests a time-served sentence.

### G. Acceptance of Responsibility and Need to Avoid Unwarranted Sentencing Disparities

In the instant case, Mr. Zwolinski has demonstrated acceptance of responsibility and provided a statement where he admitted involvement in the instant offense and assisted authorities with regard to his own misconduct by timely pleading guilty to the instant offense. Moreover, Mr. Zwolinski admitted to the factual basis of the plea agreement.

Given Mr. Zwolinski's acceptance of responsibility and need to avoid unwarranted sentencing disparities amongst similarly situated defendants, a time-served sentence will best support the statutory goals of sentencing. While Mr. Zwolinski understands that he committed a very serious offense, he is a man of good character and strong family support, with the chance for rehabilitation. Clearly, Mr. Zwolinski has learned a significant lesson and wants to reform him life and wants to make changes so that he can one day be a positive role model for his nephews. Based on the mitigating factors in this case, a time-served sentence will provide just punishment, allow for adequate deterrence, protect the public, and promote respect for the law.

## III. Mr. Zwolinski Objects to the PSR Characterization that He was a prohibited Possessor Because of His Alleged Marijuana Use

Mr. Zwolinski objects to the PSR characterization that he is a prohibited possessor, because he allegedly used marijuana during the time in question. The court must find the enhancement was proven by the preponderance of evidence standard. *United States v. Bonilla-Montenegro*, 331 F.3d 1047 (9th Cir. 2003) (Due process is generally satisfied by using a preponderance of the evidence standard to prove sentencing factors that are set forth in the United States Sentencing Guidelines.) The PSR solely relies on the following evidence to prove their allegation: "text messages sent by the defendant during the time of the offense involved defendant asked another individual for various quantities of marijuana, receiving photos of suspected marijuana, and the defendant stating it is 'the best he smoked in a while.'" (*Id.* at ¶19.) The PSR also states, "The defendant first smoked marijuana when he was 16, and he last smoked marijuana in mid-2021." (*Id.* at ¶47.)

The PSR has not proven by preponderance of the evidence that Mr. Zwolinski was actively using marijuana during the dates in question. Ordinarily, there must be some sort of corpus to prove a crime. Here, you only have Mr. Zwolinski's statements. The PSR cannot prove that Mr. Zwolinski actually used any marijuana. The PSR has no evidence of when the marijuana was actually used, or in what state or jurisdiction.

Mr. Zwolinski's objection does not affect the guideline calculations.

## IV. CONCLUSION

For the reasons set forth above, the Court should impose a time-served sentence, to be followed by three years' supervised release.

RESPECTFULLY SUBMITTED this 16th day of November 2022.

**MARIA JONES LAW OFFICE**

/s/ Joshua Kolsrud
Joshua Kolsrud, Esq.
Attorney for Defendant Zwolinski

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16th, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

HON. JOHN J. TUCHI
UNITED STATES DISTRICT COURT JUDGE

BRIAN KASPRZYK
United States Attorney's Office
Assistant United States Attorney

/s/ Joshua Kolsrud
Joshua Kolsrud, Esq.
Attorney for Defendant